[Cite as *P.S. v. High*, 2019-Ohio-437.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

P. S.

     Appellee

     v.

JASON HIGH

     Appellant

C.A. No.     18CA0008-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     17CIV0874

DECISION AND JOURNAL ENTRY

Dated: February 11, 2019

---

HENSAL, Judge.

**{¶1}** Jason High appeals a judgment of the Medina County Court of Common Pleas that granted a civil stalking protection order to P.S. against him. For the following reasons, this Court reverses.

I.

**{¶2}** According to P.S., she travelled to her granddaughter's sixth birthday party, which was at a restaurant, with her daughter A.S. and her grandson. Her grandson drove because he had just received his temporary permit and wanted to drive. When they arrived, everybody else was already there, including Mr. High, who is married to P.S.'s daughter N.H. The adults were all drinking alcohol. P.S. did not order any food because she had already eaten, but Mr. High and his wife shared a dish. According to P.S., while they were eating, Mr. High got upset with N.H. because she was taking too much of the food. P.S. tried to calm the situation by offering to help with their children, but Mr. High slammed his hands on the table and made a

weird face at her. When P.S. asked him what was wrong, Mr. High began accusing P.S. of allowing relatives to abuse N.H. when N.H. was young, which had caused him and N.H. years of marital problems. He then got up, walked to the bar, and began doing shots of whiskey with others.

{¶3} P.S. testified that, when it was time to go, she stopped in the restroom, which is adjacent to the bar. As she was leaving the restroom, she told Mr. High that they needed to talk. He turned around and began swearing at her and blaming her again for his and N.H.'s situation. P.S. responded by accusing N.H. of being a pathological liar and telling Mr. High that they just needed to talk. Mr. High stormed out of the restaurant and continued calling P.S. names in the parking lot while accusing her of ruining his marriage. He also threatened to tell lies to P.S.'s ex-husband about A.S.

{¶4} As Mr. High and N.H. drove off, P.S. began exchanging text messages with N.H. According to P.S., her grandson drove back to his house, where they sat in the driveway for a while waiting for someone to come home to unlock it. When P.S. learned that the backdoor had been left unlocked, she said goodbye to her grandson and drove home. Mr. High's truck was near the end of her driveway, however, so she could not pull into it without going into the grass. After squeezing her car onto the end of the driveway, she parked and started walking toward her house to notify the people in the house about the parking situation. As she passed by Mr. High's truck, she smacked the back of it. Suddenly, Mr. High emerged from the driver's side of the truck and punched her in the face. As she held her face, he began kicking her between her legs. P.S. testified that she ran to her house, where others helped keep Mr. High outside while she called the police.

{¶5}     Following the incident, P.S. petitioned for a civil stalking protection order for her and A.S.  P.S. testified that, about a week before the hearing on her petition, she happened to be in the parking lot of the same store as Mr. High.  When he saw her, he slammed on his truck's brakes, causing them to screech.  Mr. High then peeled out backwards onto the roadway and sped away, upsetting her and A.S., who was with her.  In addition to the conduct directed at her, P.S. testified that she has also seen Mr. High grab his son by the throat and has observed marks on his daughter's leg that she said were caused by Mr. High beating her with a belt.  A.S. testified that she has also seen Mr. High go after his children with a belt.

{¶6}     Based on the testimony of P.S. and A.S., a magistrate recommended granting P.S.'s petition, concluding that Mr. High had knowingly engaged in a pattern of conduct that caused P.S. to believe that he would cause physical harm or mental distress to her.  The trial court adopted the magistrate's decision.  Mr. High objected, but the trial court overruled his objections.  Mr. High has appealed, assigning two errors, which we have rearranged for ease of disposition.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BECAUSE, EVEN IF APPELLEE'S TESTIMONY IS TAKEN AT FACE VALUE AND ASSUMED TO BE TRUE THROUGHOUT, AS A MATTER OF LAW, APPELLANT CANNOT BE FOUND TO HAVE ENGAGED IN A PATTERN OF CONDUCT NECESSARY FOR THE ISSUANCE OF A CIVIL STALKING PROTECTION ORDER.

{¶7}     In his second assignment of error, Mr. High argues that the trial court incorrectly granted P.S. a civil stalking protection order because the conduct she accused him of did not meet the requirements for such orders.  We note that P.S. petitioned for a protection order under Revised Code Section 2903.214.  This Court has explained that, in order for a civil stalking

protection order to issue under Section 2903.214, "the trial court must find that the petitioner has shown by a preponderance of the evidence the respondent committed an act against the petitioner that would constitute menacing by stalking." *A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 6; R.C. 2903.214(C)(1). Section 2903.211(A) addresses the offense of menacing by stalking. It provides that, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person * * *." Because Mr. High challenges the sufficiency of the evidence, "we must determine whether, viewing the evidence in the light most favorable to [P.S.], a reasonable trier of fact could find that [she] demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7; *A.D. v. B.D.*, 9th Dist. Medina No. 15CA0095-M, 2017-Ohio-229, ¶ 6.

{¶8} Regarding the terms used in Section 2903.211(A), we note that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). A "[p]attern of conduct" is "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *." R.C. 2903.211(D)(1). "A court must take everything into consideration when determining if [a person's] conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." *R.C.* at ¶ 12, quoting *Guthrie v. Long*, 10th Dist. Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 12. "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.

2901.01(A)(3). "Mental distress" means either "[a]ny mental illness or condition that involves some temporary substantial incapacity" or (2) "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).

{¶9} Mr. High argues that P.S. failed to establish that he engaged in a pattern of conduct. The trial court found that his abusive verbal conduct with P.S. at the restaurant followed by his assault of her later that day constituted a pattern of conduct. Mr. High argues that the fact that he allegedly slammed his hands on the table, gave P.S. a weird look, and called her a "bitch" at the restaurant was insufficient to constitute an incident under Section 2903.211(D)(1). He argues that there is no indication that his interaction with P.S. at the restaurant caused her any fear. In particular, he notes that, after leaving the restaurant, she sent a text message to his wife telling him to "bring it." In another text message directed at him, P.S. asked "[w]here are you, little bitch[?]" According to Mr. High, the allegation that he physically assaulted P.S. once, standing alone, is insufficient to support the issuance of a civil stalking protection order.

{¶10} Upon review of the record, we conclude that there was insufficient evidence to establish that Mr. High engaged in a pattern of conduct. Although the incident at the restaurant culminated in Mr. High striking P.S. later that evening, there is no indication that Mr. High ever threatened physical harm to P.S. or caused any harm to her outside of that one instance. While he may have changed course and drove away quickly after seeing P.S. in a store parking lot some weeks later, there is no indication that his truck was close to P.S. and her daughter or that he drove in their direction after seeing them. In addition, because P.S. and A.S. do not live in the

same household as Mr. High, the fact that he may have disciplined his children by hitting them with a belt at some unknown time does not bear on whether they have reason to believe that he will cause them physical harm. Accordingly, because there is no evidence that Mr. High engaged in a pattern of conduct under Section 2903.211(D)(1), we conclude that the trial court incorrectly granted P.S.'s petition for a civil stalking protection order. Mr. High's second assignment of error is sustained.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN UPHOLDING THE CIVIL STALKING PROTECTION ORDER BECAUSE THE EVIDENCE, WHEN VIEWED OBJECTIVELY, CANNOT SUPPORT A FINDING THAT APPELLEE MET HER BURDEN OF PROOF AND THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} In his first assignment of error, Mr. High argues that the trial court's factual findings were based on insufficient evidence and are against the weight of the evidence. In light of our resolution of his second assignment of error, we conclude that these arguments are moot. We, therefore, decline to consider them. App.R. 12(A)(1)(c).

III.

{¶12} Mr. High's second assignment of error is sustained. His first assignment of error is moot. The judgment of the Medina County Court of Common Pleas is reversed.

Judgment reversed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

 

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

P.S., pro se, Appellee.