[Cite as *State v. Kirkendoll*, 2019-Ohio-5019.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

JOHNATHAN R. KIRKENDOLL

    Appellant

C.A. No.    19CA011465

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CR099474

DECISION AND JOURNAL ENTRY

Dated: December 9, 2019

CARR, Judge.

{¶1}   Defendant-Appellant Johnathan Kirkendoll appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Kirkendoll and the victim knew each other since childhood.  But it was not until around March 2016 that the two began dating.  After the victim moved to the west side of Lorain into an apartment, around Christmastime 2017, Kirkendoll began getting violent with the victim.  Around this time, the building manager of the apartment sent Kirkendoll a notice and informed the victim that Kirkendoll was no longer allowed at the complex as he had previously kicked in the door of the apartment.  The victim told the building manager that the victim informed Kirkendoll that he was no longer permitted there.  The victim maintained that Kirkendoll never lived with the victim in her west side apartment.  She further asserted that Kirkendoll was not on the lease and did not have a key.  Only the victim and her young daughter were listed on the

lease. However, Kirkendoll did stay at the victim's apartment "a lot[,]" and occasionally for periods of a couple weeks at a time.

{¶3} On August 9, 2018, Kirkendoll drove the victim to the hospital so that she could have emergency surgery due to an ectopic pregnancy. While at the hospital, Kirkendoll became irritated with the victim and the victim had to have Kirkendoll removed from the hospital. After the surgery, the victim went to stay at her mother's house and parked her car at a friend's house. She was afraid Kirkendoll would damage her car because he had made threats that he would do so.

{¶4} The next morning, Kirkendoll wanted the victim to drive him to a court date but the victim explained that, because of her surgery, she was not allowed to drive. Shortly thereafter, the victim received a phone call from Kirkendoll telling her that she "might as well call the police and everything. [Kirkendoll] just destroyed [her] TV and everything else." The victim called the police and had the officer come to her mother's house because she was too afraid to go to her apartment. She told police that her apartment had been broken into and destroyed. The police retrieved a key from the victim and went to her apartment. The police discovered no forced entry but found the apartment in disarray. Bleach was poured all over, furniture was cut, food was thrown around, and the TV was smashed. Once police arrived, the victim returned to her apartment to survey the damage.

{¶5} With respect to the events of August 10, 2018, Kirkendoll was charged with one count of burglary, one count of criminal damaging, and one count of criminal mischief.

{¶6} On August 17, 2018, Kirkendoll was over and began asking the victim questions about different men. Kirkendoll then demanded the victim's phone and told the victim that she was "gonna tell [him] everything [he] want[ed] to know or [he was] gonna beat [her] to death or

kill [her]." The victim believed he would do it because he had hurt her before. At the time, the victim's daughter was in another room in the apartment. As the victim gave Kirkendoll the phone, she ran out of the apartment and Kirkendoll followed her. The two struggled and Kirkendoll tried to drag the victim back into the apartment. During the struggle, the victim's arm was broken. When the victim broke free, she ran to the manager's building and called the police, but the police were unable to respond to the call at the time. Once the victim was sure that Kirkendoll was gone from the apartment, she returned to get her daughter. Thereafter, the victim went to the police station to file a report.

{¶7} After the victim left the police station, she was too afraid to go back to the apartment. Later that day, the building manager was informed by a tenant that Kirkendoll had returned. Footage from the surveillance camera depicts an individual identified as Kirkendoll kicking in the door to the victim's apartment, entering the apartment, and minutes later leaving. The building manager called the police and the victim was informed of the incident. Police only talked to the victim on the phone as she was too afraid to return to the apartment even with police presence.

{¶8} With respect to the events of August 17, 2018, Kirkendoll was charged with one count of burglary, one count of menacing by stalking, one count of assault, and one count of criminal trespass.

{¶9} After that day, Kirkendoll continued to "constantly" call the victim's phone. On September 5, 2018, an officer responded to the victim's apartment because she had called police stating that Kirkendoll had called her and was en route to her apartment. The officer arrived and checked the property and residence but Kirkendoll was nowhere to be found. Around 15 to 20 minutes later, the victim again called police and informed police that Kirkendoll "was actively

kicking in the door to her residence." When the officer arrived, he found "the door to be kicked in, partially opened with the door frame cracked." Kirkendoll was not located. The officer described the victim as "[t]errified" and that "she looked like she had been crying and she was very scared." Surveillance video shows a person identified as an acquaintance of Kirkendoll knock at the door and leave. Shortly thereafter, a person identified as Kirkendoll approaches the door, knocks, and leaves. Seconds later, Kirkendoll reappears, knocks on the apartment door, waits, turns to leave but then kicks the door, and then leaves.

{¶10} As to the September 5, 2018 incidents, Kirkendoll was charged with menacing by stalking, criminal damaging, and criminal trespass.

{¶11} The matter proceeded to a jury trial. The jury found Kirkendoll guilty of all of the charges aside from the burglary charge related to the events of August 10, 2018. The trial court sentenced Kirkendoll to an aggregate term of eight years and four months. In so doing, the trial court ordered two of the counts to run consecutively.

{¶12} Kirkendoll has appealed, raising five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

DEFENDANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT.

{¶13} Kirkendoll argues in his first assignment of error that his trial counsel was ineffective. Specifically, he asserts that trial counsel was ineffective in failing to file for discovery and in not filing a written motion to dismiss based upon speedy trial. Additionally, he contends trial counsel was unprepared for trial. Further, Kirkendoll maintains trial counsel was ineffective in failing to object to the jury instruction pertaining to the burglary charge from August 17, 2018.

{¶14} In order to prevail on a claim of ineffective assistance of counsel, Kirkendoll must show that trial "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Kirkendoll must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Kirkendoll must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534.

### Discovery and Trial Preparation

{¶15} Kirkendoll argues that his trial counsel was deficient in failing to file motions for discovery. However, the record is clear that trial counsel did not file a motion for discovery at the request of Kirkendoll. Specifically, trial counsel explained to the trial court:

> My client has told me from day one he did not want to waive time in this matter, and he further instructed me not to file for discovery, as it would toll a limited amount of time. I honored that request.

> I have some basic knowledge of it. I am prepared to go to trial and defend it with vigor. I did discuss the amount of time he could serve and would serve if he was to plead, but we needed to put everything on the record.

{¶16} With respect to trial counsel's decision not to request discovery, this Court has stated "the omission is largely a matter of trial strategy, which does not demonstrate ineffective assistance." *State v. Williams*, 9th Dist. Lorain No. 09CA004830, 1991 WL 43317, *4 (Mar. 27, 1991); *see also State v. Hatfield*, 9th Dist. Wayne Nos. 1711, 1712, 1713, 1714, 1715, 1720, 1981 WL 3987, *1-2 (May 20, 1981). "The reasonableness of counsel's determination concerning the extent, method and scope of any criminal discovery necessarily depends upon the particular facts and circumstances of each case." *State v. Allen*, 10th Dist. Franklin No. 02AP-

862, 2003-Ohio-1114, ¶ 7. Here, Kirkendoll himself asked trial counsel not to file for discovery in an effort to seek dismissal based upon a violation of his right to a speedy trial. While the strategy was ultimately unsuccessful, that does not make it inherently unreasonable. *See id.* at ¶ 7.

{¶17} Given that strategy, Kirkendoll faults trial counsel for failing to file a written motion to dismiss based upon a speedy trial violation. However, trial counsel, on the day of trial, did move the trial court to dismiss the matter due to an alleged speedy trial violation. Kirkendoll has not offered an explanation as to why a written motion was necessary. *See* App.R. 16(A)(7).

{¶18} Kirkendoll also asserts that the failure to file for discovery left trial counsel unprepared for trial. However, as noted above, trial counsel expressly asserted that, notwithstanding the lack of discovery, he was prepared to go to trial and vigorously defend Kirkendoll. Even though trial counsel did not present any witnesses in Kirkendoll's defense, trial counsel raised numerous objections and cross-examined most of the State's witnesses. Moreover, Kirkendoll has not argued that there were witnesses that should have been called that were not.

### Failure to Object to Jury Instruction

{¶19} Kirkendoll additionally argues that trial counsel was ineffective in failing to object to the jury instruction for the burglary count related to the events of August 17, 2018. Kirkendoll notes that the wording of the indictment for both burglary counts was nearly identical; yet, with respect to the first count, related to the events of August 10, 2018, the jury was instructed as to knowledge, but as to the second count which related to August 17, 2018, the jury was additionally instructed as to recklessness. Kirkendoll hypothesizes that this difference is not only improper, it is the reason the jury found him not guilty of the first count of burglary.

{¶20} "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." (Internal quotations and citations omitted.) *State v. Wamsley,* 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17. Kirkendoll was charged with two counts of burglary in violation of R.C. 2911.12(A)(2). That statute provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]" Trespass is an element of burglary as prohibited by R.C. 2911.12. *See* R.C. 2911.10. R.C. 2911.10 states that, "[a]s used in sections 2911.11 to 2911.13 of the Revised Code, the element of trespass refers to a violation of section 2911.21 of the Revised Code." R.C. 2911.21 prohibits four types of conduct. *See* R.C. 2911.21(A)(1)-(4). Further, as defined by R.C. 2911.21, "to be guilty of trespass, the defendant must act either knowingly, recklessly, or negligently." *Wamsley* at ¶ 14.

{¶21} With respect to count one and the events of August 10, 2018, the trial court defined trespass as requiring that Kirkendoll "knowingly entered or remained on the land or premises of another without privilege to do so * * *." This language corresponds to R.C. 2911.21(A)(1), which states "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]" With respect to count two and the events of August 17, 2018, the trial court defined trespass as requiring that Kirkendoll "knowingly entered or remained on the land or premises of another without privilege to do so or that he recklessly entered or remained on the land or premises of [the victim] as to which notice against

unauthorized access or presence was given to the defendant by actual communication to the defendant * * *." This language corresponds to a combination of language in R.C. 2911.21(A)(1) and (A)(3). R.C. 2911.12(A)(3) states that "[n]o person, without privilege to do so, shall * * * [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access[.]"

{¶22} Given the foregoing, including Kirkendoll's limited argument on the issue, Kirkendoll has not demonstrated that trial counsel's performance was deficient in failing to object to the jury instruction pertaining to the second count of burglary. In light of the law outlined above, Kirkendoll has not explained why the difference between the two counts of burglary is problematic or objectionable. R.C. 2911.12(A) provides that criminal trespass can involve a negligent, reckless, or knowing intent depending on the factual circumstances. *See also Wamsley* at ¶ 14.

{¶23} Kirkendoll's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT DENIED APPELLANT DUE PROCESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY BEING VINDICTIVE IN ITS SENTENCING FOR EXERCISING HIS RIGHTS TO NOT PLEAD GUILTY AND HAVE HIS CASE TRIED BEFORE A JURY.

{¶24} Kirkendoll argues in his second assignment of error that the trial court's sentence reflects that Kirkendoll was punished for not accepting a plea deal and instead taking his case to trial.

{¶25} "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes," or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St. 3d 516, 2016-Ohio-1002, ¶ 1. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *. There is no question, then, that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." (Internal quotations and citations omitted.) *State v. Brooks*, 9th Dist. Lorain No. 16CA010958, 2017-Ohio-5620, ¶ 15, quoting *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, ¶ 8. However, "'there is no presumption of vindictiveness when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term.'" *State v. Bugg*, 9th Dist. Lorain No. 18CA011287, 2019-Ohio-1692, ¶ 6, quoting *Rahab* at ¶ 3; *see also Rahab* at ¶ 34 (Hoover, J., concurring in part and dissenting in part) (concurring with the foregoing quoted language). "To determine if a trial court acted vindictively in sentencing a defendant, '[w]e [ ] review the entire record – the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing – to determine whether there is evidence of actual vindictiveness. We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Brooks* at ¶ 15, quoting *Rahab* at ¶ 19; *see also Rahab* at ¶ 34 (Hoover, J., concurring in part and dissenting in part) (concurring with the foregoing quoted language).

{¶26} Prior to trial, possible plea agreements were discussed. The State stated that it had not made any offer but indicated that it was thinking 10 or 11 years. The trial court then asked the prosecutor to list Kirkendoll's charges and also sought information about his record.

The State provided a lengthy list of convictions. The trial court and parties seemed to be in agreement that Kirkendoll could be subject to 19 years in prison if convicted on all counts following a trial.

{¶27} The trial court then engaged in a dialogue with Kirkendoll:

[Trial court:] Mr. Kirkendoll, are you aware if you're convicted of the felony counts with which you're charged, you could be facing up to 19 years in prison?

[Kirkendoll:] Yes.

[Trial court:] And are you aware that, pursuant to discussion between myself, the prosecutor, and your attorney, that I have indicated if you were to plead today, that you would be looking at a three-year sentence? Are you aware of that?

[Kirkendoll:] Yes.

[Trial court:] And after discussing that with your attorney and considering all the facts and circumstances, is it still your decision to go forward with trial on Monday?

[Kirkendoll:] Yes, Your Honor.

[Trial court:] Very well. Now, understand that, you know, depending on how the trial goes, you could walk out of here with, you know, a not guilty and nothing. But, on the other hand, right now what I know about this case is very limited. I know your record; I know the charges Okay?

I haven't heard from the victim – or the alleged victim, the complaining witness. Haven't heard from any other witness. Haven't heard from you, if you choose to testify or not. All these things can come into play, which may or may not cause the three years that I'm considering to be a different number. It could be less; it could be more.

But understand this, right now, that's a number that pretty much I'm offering based solely on the charges and your record. Do you understand that?

[Kirkendoll:] Yeah, yeah. I understand, yeah.

{¶28} The matter did proceed to a jury trial and Kirkendoll was found guilty of all of the charges aside from the first count of burglary. The trial court sentenced Kirkendoll to an aggregate term of 8 years and 4 months. Kirkendoll received 7 years for burglary, 16 months for

the menacing by stalking counts, 6 months for assault, 3 months for the criminal damaging counts, and two months for the criminal trespass and criminal mischief counts. The sentences were ordered to run concurrently, aside from the sentence for one of the menacing by stalking counts which was ordered to run consecutively.

{¶29} Kirkendoll argues the sentence was clearly vindictive because the trial court sentenced Kirkendoll to consecutive sentences based upon his criminal record when the trial court was aware of Kirkendoll's criminal record prior to trial. In addition, Kirkendoll points out that the trial court stated, prior to trial, that the trial court could sentence Kirkendoll to more time if the matter proceeded to trial and he was found guilty, and that was what happened.

{¶30} First, we note that with respect to consecutive sentences, the trial court stated the following:

> [G]iven the separate nature of the offenses in Counts Two and Four, that causes me, along with your record, to believe that consecutive sentences are necessary to fulfill the purposes of R.C. 2929.11. And they're not disproportionate to the seriousness of your conduct or the danger you pose to society. And I further find that your criminal history does require consecutive sentences and that harm caused was great or unusual.

{¶31} Thus, Kirkendoll's criminal history was not the sole basis for the trial court to conclude that consecutive sentences were appropriate. As to the trial court's pretrial statement that Kirkendoll could receive more time if he went to trial, the trial court also told Kirkendoll that he could receive less time, or no time if he was found not guilty of the charges. We cannot say that the foregoing evidences actual vindictiveness on the part of the trial court. *See Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, at ¶ 19. Moreover, at the time of sentencing, the trial court had a more thorough understanding of the facts of the case; the trial court heard the victim's testimony, the testimony of the police officers that interacted with the victim, and saw the surveillance video depicting Kirkendoll's violent behavior. In addition, the trial court

learned that Kirkendoll had tried to contact the victim from jail to attempt to convince her not to appear. A victim impact statement was also read at the time of sentencing; therein, the victim described the effect Kirkendoll's actions had on the victim's daughter. *See* R.C. 2929.11(B); R.C. 2929.12(B)(1), (2), (6). The trial court also heard from Kirkendoll. Kirkendoll claimed to apologize and accept full responsibility for his actions, but at the same time seemed to accuse the victim of lying and denied many allegations. Accordingly, the trial court could have reasonably found that Kirkendoll was not remorseful. *See* R.C. 2929.12(D)(5).

{¶32} Overall, we cannot say that Kirkendoll has demonstrated his sentence was contrary to law as the record does not evidence that the sentence was imposed as a result of actual vindictiveness on the part of the trial court. *See Rahab* at ¶ 19.

{¶33} Kirkendoll's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE COURT ERRED BY SENTENCING APPELLANT TO CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929[.14] AND IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMEND[MENTS] TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 AND 16 OF THE OHIO CONSTITUTION.

{¶34} Kirkendoll argues in his third assignment of error that the trial court erred by imposing consecutive sentences in violation of R.C. 2929.14(C)(4). Specifically, Kirkendoll argues that the trial court failed to make the required findings at the sentencing hearing.

{¶35} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶36} "If a court does not make the factual findings required by Section 2929.14(C)(4), prison terms are served concurrent to any others." (Internal quotations omitted.) *State v. Bennett*, 9th Dist. Summit Nos. 28842, 28843, 2018-Ohio-3935, ¶ 10, quoting *State v. Suggs*, 9th Dist. Summit Nos. 27812, 27865, 27866, 2016-Ohio-5692, ¶ 20, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 23. "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing[; h]owever, a word-for-word recitation of the language of the statute is not required[.] [A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." (Internal quotations and citation omitted.) *Bennett* at ¶ 10.

{¶37} When imposing consecutive sentences at the sentencing hearing, the trial court found that:

[G]iven the separate nature of the offenses in Counts Two and Four, that causes me, along with your record, to believe that consecutive sentences are necessary to fulfill the purposes of [R.C.] 2929.11. And they're not disproportionate to the seriousness of your conduct or the danger you pose to society. And I further find that your criminal history does require consecutive sentences and that harm caused was great or unusual.

{¶38} Kirkendoll correctly points out that R.C. 2929.11 is not mentioned in R.C. 2929.14(C)(4). Because of this, Kirkendoll argues that the trial court failed to find that consecutive service was necessary to protect the public from future crime or to punish the offender. *See* R.C. 2929.14(C)(4).

{¶39} While the trial court's findings are clearly not a word-for-word recitation of the statute, we nonetheless conclude that the trial court engaged in the appropriate analysis and considerations. *See Bennett* at ¶ 10. Notably, R.C. 2929.11(A) provides, in pertinent part, that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Thus, despite R.C. 2929.14(C)(4) not mentioning R.C. 2929.11, R.C. 2929.14(C)(4) clearly utilizes language from R.C. 2929.11. Therefore, we cannot say that Kirkendoll has demonstrated that the trial court failed to make the appropriate findings or engage in the correct analysis at the sentencing hearing.

{¶40} Kirkendoll's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING MR. KIRKENDOLL'S MOTION TO DISMISS IN VIOLATION OF ORC 2945.71 AND ORC 2945.72 AS WELL AS THE UNITED STATES AND STATE OF OHIO CONSTITUTIONS AS MR. KIRKENDOLL'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED.

{¶41} Kirkendoll argues in his fourth assignment of error that the trial court erred in denying his motion to dismiss based upon an alleged violation of his right to a speedy trial. Essentially, Kirkendoll contends that the triple-count provision of R.C. 2945.71(E) applied and he therefore had to be tried within 90 days. He further asserts that that period expired prior to the

day of trial. He maintains the State failed to meet its burden to demonstrate a tolling event or that the triple-count provision did not apply and he was accordingly entitled to be discharged.

{¶42} On the day of trial, Kirkendoll's counsel made the following motion: "On behalf of my client only, he has argued that the time he was sitting did not toll this case's time, and he wished me to put that on the record, that we are past the 90 days to bring him to trial." The State and the trial court then expressed their belief that Kirkendoll was "still sitting on a case out of Lorain Muni" and so the triple-count provision did not apply. The State also indicated that it believed that that was also Kirkendoll's counsel's understanding when they chose the trial date. Kirkendoll's counsel did not disagree or object to the characterization. The trial court denied the motion.

{¶43} The triple-count provision is applicable only to those defendants held in jail in lieu of bail solely on the pending charge. *State v. MacDonald*, 48 Ohio St.2d 66 (1976), paragraph one of the syllabus. As noted by Kirkendoll, the Supreme Court has concluded that, when a defendant alleges in a motion that he was incarcerated solely on the pending charge and then demonstrates he was not brought to trial within the limits of the triple-count provision, he has presented a prima facie case for discharge. *State v. Butcher*, 27 Ohio St.3d 28, 30-31 (1986). It is only at that point that a burden of production then falls upon the State. *See id.* at 31. Kirkendoll, however, did not allege that he was incarcerated solely on the pending charges. Thus, we cannot say that Kirkendoll established a prima facie case for discharge. *See id.* at 30-31. Kirkendoll has not demonstrated that the trial court erred in denying his motion to dismiss.

{¶44} Kirkendoll's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE

FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶45} Kirkendoll appears to argue in his fifth assignment of error, while blending the concepts of sufficiency and manifest weight, that there was insufficient evidence concerning the menacing by stalking charge pertaining to the events of August 17, 2018. Specifically, Kirkendoll alleges that there was insufficient evidence of a pattern of conduct as the indictment was limited to August 17, 2018.

{¶46} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶47} R.C. 2903.211(A)(1), the statute prohibiting menacing by stalking provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶48} R.C. 2903.211(D)(1) defines "[p]attern of conduct" as:

[T]wo or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity, or the posting of messages, use of intentionally written or verbal graphic gestures, or receipt of information or data through the use of any form of written communication or an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

{¶49} "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *K.N. v. Render*, 9th Dist. Medina No. 19CA0018-M, 2019-Ohio-3981, ¶ 17, quoting *Wagner v. Holland*, 5th Dist. Fairfield No. 15-CA-56, 2016-Ohio-5028, ¶ 30.

{¶50} Viewing the evidence in a light most favorable to the prosecution, we conclude that sufficient evidence was presented whereby a trier of fact could conclude that Kirkendoll engaged in a pattern of conduct, as defined by the statute, on August 17, 2018. The record discloses two separate incidents involving Kirkendoll on August 17, 2018. First, around noon, Kirkendoll and the victim had an argument which escalated into Kirkendoll threatening to kill the victim. Kirkendoll also took the victim's phone. The victim fled the apartment and Kirkendoll followed her. The two struggled and Kirkendoll tried to drag the victim back into the apartment. During that struggle, the victim's arm was broken. The victim was able to escape and ultimately reported the incident to the police.

{¶51} When the victim left the police station, she was too afraid to return to the apartment. Around 6:30 p.m., police again responded to the victim's apartment after the building manager reported that someone was trying to kick in the victim's apartment door. The apartment was empty when police arrived. Police reviewed security footage and observed an individual identified as Kirkendoll forcibly kicking in the door to the victim's apartment, entering the apartment, and shortly thereafter exiting the apartment. When the officer contacted the victim, she was too afraid to go to the apartment even with police presence.

{¶52} We can only conclude that the State presented sufficient evidence that Kirkendoll engaged in a pattern of conduct on August 17, 2018, and therefore, given Kirkendoll's limited argument on appeal, we also determine that sufficient evidence was presented to support Kirkendoll's conviction for menacing by stalking.

{¶53} Kirkendoll's fifth assignment of error is overruled.

## III.

{¶54} Kirkendoll's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.