[Cite as *State v. Cunningham*, 2021-Ohio-2710.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 19CA0081-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BENJAMIN W. CUNNINGHAM | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 19 CR 0126 |

DECISION AND JOURNAL ENTRY

Dated: August 9, 2021

CARR, Judge.

{¶1} Defendant-Appellant Benjamin W. Cunningham appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Cunningham and the victim were married and lived together in January 2019. At the time, the victim had two children, a daughter and a son. Cunningham was only the father of the son. In addition, the victim was then pregnant with Cunningham's child.

{¶3} In the early morning hours of January 27, 2019, the victim called 911 and whispered that she needed help. The police arrived and the victim provided a written statement to police wherein she described Cunningham assaulting her on and off throughout the prior day into the night. She indicated that he repeatedly slapped her in the face, dragged her by her hair, kicked in a door, punched her in the head twice, and threw a lighter at her. A contusion was noted on her head and she was transported to the hospital. Cunningham was arrested but was later released on

bond. In February 2019, Cunningham was indicted on one count of domestic violence in violation of R.C. 2919.25(A)/(D)(5). The indictment included an allegation that Cunningham knew the victim was pregnant at the time, causing the offense to be a fifth-degree felony. *See* R.C. 2919.25(D)(5).

{¶4} On April 22, 2019, the victim called the police a second time. The victim told police that she had received text messages from Cunningham earlier that day. Those messages stated that, "You ruined my career" and "I won't be happy until I kill you[.]" Sometime after receiving the messages, she left the house to pick up her daughter. While waiting outside the building, she saw Cunningham in his car. The victim then drove away, and Cunningham continued to follow her for about 15 minutes. The victim called Cunningham and asked why he was following her, but he just hung up on her. The victim then called the police. Cunningham was again arrested.

{¶5} Following that incident, a supplemental indictment was filed in May 2019 charging Cunningham with one count of menacing by stalking in violation of R.C. 2903.211(A)(1)/(B)(2)(b). Because it was alleged that Cunningham made a threat of physical harm to or against the victim, the crime was charged as a fourth-degree felony. *See* R.C. 2903.211(B)(2)(b).

{¶6} The matter proceeded to a jury trial. The jury found Cunningham guilty of both counts, and the trial court sentenced Cunningham accordingly. Cunningham has appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO SUPPORT THE DEFENDANT'S CONVICTION OF MENACING BY STALKING[.]

{¶7} Cunningham argues in his first assignment of error that the evidence was insufficient to support his conviction for menacing by stalking. Specifically, he maintains that there was insufficient evidence that he engaged in a pattern of conduct.

{¶8} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶9} R.C. 2903.211(A)(1) provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

Menacing by stalking is a fourth-degree felony when, "[i]n committing the offense under division (A)(1) * * * of this section, the offender made a threat of physical harm to or against the victim * * *." R.C. 2903.211(B)(2)(b).

> "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity, or the posting of messages, use of intentionally written or verbal graphic gestures, or receipt of information or data through the use of any form of written communication or an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

R.C. 2903.211(D)(1).

{¶10} Thus, a pattern of conduct requires only two or more actions or incidents. *See id.*; *see also K.N. v. Render*, 9th Dist. Medina No. 19CA0018-M, 2019-Ohio-3981, ¶ 17. "A court must take everything into consideration when determining if [a person's] conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." *Id.*, quoting *P.S. v. High*, 9th Dist. Medina No. 18CA0008-M, 2019-Ohio-437, ¶ 8. "In addition, 'R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them.'" *K.N.* at ¶ 17, quoting *Wagner v. Holland*, 5th Dist. Fairfield No. 15CA-56, 2016-Ohio-5028, ¶ 30; *see also State v. Kirkendoll*, 9th Dist. Lorain No. 19CA011465, 2019-Ohio-5019, ¶ 49. "In failing to delimit the temporal period within which the two or more actions or incidents must occur, the

statute leaves that matter to be determined by the trier of fact on a case-by-case basis." (Internal quotations and citations omitted.) *Echemann v. Echemann*, 3d Dist. Shelby No. 17-15-19, 2016-Ohio-3212, ¶ 35.

{¶11} Here, viewing the evidence in a light most favorable to the State, we conclude there was sufficient evidence presented whereby a reasonable trier of fact could conclude that Cunningham engaged in a pattern of conduct.

{¶12} The victim informed the police, that on April 22, 2019, Cunningham sent her two text messages. One stating, "You ruined my career[,]" and a second which read, "I won't be happy until I kill you[.]" The victim also told police that she took his texts as a serious threat. She indicated that Cunningham "had been making her life miserable" for the past four days because he lost a job or did not get a job because of the pending domestic violence charge.

{¶13} The victim reported to police that, a short time after receiving the text messages, she left to go to the Medina County Career Center to pick up her daughter. When she arrived there, she noticed that Cunningham was behind her vehicle in his vehicle. The victim then called a friend to pick up her daughter. The victim drove off because she feared for her safety and wanted to try to separate herself from him. Cunningham followed her around town for about 15 minutes. The victim tried to call Cunningham, but he would answer the phone and then hang up. After about 15 minutes, the victim called the police. She told police that Cunningham was following her and there was a no-contact order issued against him. An officer observed Cunningham following the victim and pulled his vehicle over. The victim reported to the police department where she provided police with a written statement.

{¶14} The officer who pulled Cunningham over reported that Cunningham told the officer that he was following the victim because she was driving erratically, and he was concerned that

his son was in the car. He then claimed that he was trying to call the Brunswick police. Cunningham denied knowing anything about threatening text messages. Police discovered that, as part of his bond conditions, Cunningham was to have no contact with the victim. As Cunningham was being arrested, he mentioned something about the victim stealing his prescription.

{¶15} While the victim later sent a letter to the prosecutor to attempt to get the charge dismissed, and also testified at trial that she sent the text messages to herself from Cunningham's phone, that Cunningham only followed her for seconds, and that she was not threatened by him, such conflicting testimony goes to issues of credibility and weight of the evidence, not sufficiency. *See State v. McCormick*, 9th Dist. Summit No. 29121, 2019-Ohio-2204, ¶ 20. Nevertheless, in that testimony, the victim indicated that the text messages were sent around 10:30 or 10:45 a.m. and that Cunningham was not stopped for following her until after 2:00 p.m. Thus, viewing the evidence in a light most favorable to the State, a few hours passed between when the texts were sent and when Cunningham was arrested after following the victim.

{¶16} Given the foregoing, we conclude that sufficient evidence was presented whereby a reasonable trier of fact could conclude beyond a reasonable doubt that Cunningham engaged in a pattern of conduct as contemplated by R.C. 2903.211(D)(1). While Cunningham describes the texts and the act of following the victim as one incident, the record discloses that there was sufficient evidence presented that the events could be viewed as being separated sufficiently in time to constitute two incidents. *See K.N.*, 2019-Ohio-3981, at ¶ 17.

{¶17} Cunningham's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE JURY'S FINDING OF GUILTY ON THE CHARGE OF DOMESTIC VIOLENCE AND MENACING BY STALKING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶18}  Cunningham argues in his second assignment of error that the jury lost its way in finding him guilty of domestic violence and menacing by stalking.  In so doing, Cunningham primarily relies upon the fact that the victim recanted her statements to police.  He maintains that the evidence was overwhelming that the victim fabricated both incidents because she was angry with Cunningham for contacting other women.

{¶19}  A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence.  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶20}  Given that the charges stem from two separate incidents, we will discuss the facts relating to each separately.

**Domestic Violence**

{¶21}  In her statement to the police, the victim indicated that, on January 26, 2019, Cunningham woke up in a bad mood and she tried to stay away from him.  However, anytime that she would go to sit in another room, he would come in and smack her in the face.  She told Cunningham several times to stop hitting her or she would call the police.  In the afternoon, he dragged her by her hair and then left the house.  The victim then called a family friend and went

over there with the children. When she went back home, Cunningham was watching TV and he started to be mean to her again. The victim took her daughter to her daughter's bedroom because Cunningham tended to take things out on the daughter because he was not her father. Cunningham kept following the victim around and asking for her keys. She refused to give them to him and so he smacked her in the face again. The victim told Cunningham to stop hitting her in front of the children. After she put their son to bed, Cunningham came back in the room asking for the keys and slapped her in the face again when she failed to comply. This woke their son up and Cunningham then threatened to wake the daughter up. Cunningham kicked in the door to the daughter's room. The victim stayed with the daughter to calm her down and their son also came in the room. Then Cunningham came back into that room and punched the victim twice in her head. He left, but then came back in the room and threw a lighter at her. Ultimately, early in the morning on January 27, 2019, the victim called 911.

{¶22} Police dispatch reported that a woman had called 911 and whispered that she needed help. Police arrived to a dark house; however, within minutes, the victim opened the door. The victim appeared to be frightened and was carrying her son. The victim was only speaking in whispers. She appeared to have been crying and her face was red. The victim, who was six months pregnant at the time, told police that Cunningham was upstairs, and she did not want him to hurt the children. Photos of the victim's injuries were taken, and those photos were presented to the jury as exhibits.

{¶23} The officer who spoke to Cunningham described him as confrontational. He also indicated that Cunningham was slurring his words and had an odor of alcoholic beverage on his person. Cunningham denied making any threats and said he had been asleep for an hour or so. When he was arrested, he claimed that the victim had a history of making up domestic violence

claims. While Cunningham was in the police cruiser, he stated that any injuries the victim had were from her punching herself in the head. Two of the officers noticed that Cunningham's knuckles appeared to be slightly reddened. Cunningham's knuckles were photographed at the station; however, the photograph did not come out as clear as it appeared in person. One of the officers reported finding the door frame to the daughter's room broken and opined that the door had been recently forced in.

{¶24} Later in the morning on January 27, 2019, Cunningham called the victim from jail. He began the phone call by telling the victim to not hang up. Cunningham stated that he "felt bad all night[ and] didn't get to sleep." He went on to say, "all night I was mad at myself. You didn't do anything." Cunningham told the victim, "It's not fair. It's me taking my stress out and it's not fair * * *. You know, I'm sorry." The victim told Cunningham, "I'm not your punching bag and you treated me like it the entire time." Cunningham replied, "You're not. I don't know what it is, and I don't think I can have an analogy to find someone as a punching bag. I need to find a different solution how to handle stuff[.]" The victim informed Cunningham that she told his mom that "all [the victim] want[ed] was to know [Cunningham] [was] never going to hit [her] again, then [they could] make this work." Cunningham then reminded the victim that they were "on these phones" and that he never hit her and never wanted to hit her. Cunningham later asked the victim to accept his apology and the victim stated that she "just want[ed] to be safe again." The victim then indicated that she would call the police station and ask what she could do for Cunningham. In April 2019, the victim sent a letter to the prosecutor recanting her allegations.

{¶25} At trial, the victim testified to a different version of events. She testified that she began arguing with Cunningham the morning of January 26, 2019, after she saw that Cunningham had texts from another woman. The victim confronted Cunningham about it, but he denied

knowing what she was talking about. The victim was very upset. Cunningham then left. The victim contacted a friend and they met up and took the children to a play area. While she was there, the victim claimed she fell chasing after her son. The victim then went to a family friend's house before going home around 6:00 p.m.

{¶26} When the victim returned home, Cunningham was watching TV. The victim said something to Cunningham, and he ignored her, so she pulled the plug from the TV. Cunningham went into their bedroom and locked the door and continued to ignore her. While the victim was doing some things around the house, their son locked himself in her daughter's bedroom. The victim testified that it took one kick for her to kick in the door. Later, the victim tried to talk to Cunningham about his unfaithfulness and he laughed at her and told her he did not want her. The victim again became very upset and began hurting herself; she claimed that she pinched and slapped herself, punched herself in the head with her ring, and hit her head into the wall. Then the victim called 911.

{¶27} The victim testified that she lied to the police about Cunningham assaulting her and that she did so because she wanted to get him in trouble and thought it would help her with a divorce. The victim testified that she had been previously a victim of domestic violence at the hands of someone else, and, thus, knew how the system worked. The victim indicated that Cunningham was apologizing on the jail call for his infidelity and that she said on the call that he hit her because she knew that the call was monitored, and that Cunningham would get in more trouble.

{¶28} Cunningham's mother also testified. She indicated that on January 27, 2019, the victim called her early in the morning asking her to get to the hospital because Cunningham had been cheating on the victim and the victim was going to make Cunningham suffer. The victim did

not mention Cunningham hitting the victim. The victim later told Cunningham's mother that the victim had lied about what Cunningham did and did so because she believed he was having an affair and wanted him to suffer.

{¶29} After considering all of the evidence, we cannot say that the jury lost its way in finding Cunningham guilty of domestic violence. "While the jury was presented with conflicting evidence, [w]e remain mindful that the jury had an opportunity to view the witnesses and was in the best position to assess the credibility of the evidence presented by the parties at trial." *State v. Bracy*, 9th Dist. Summit No. 28745, 2018-Ohio-2542, ¶ 28, quoting *State v. Garrett*, 9th Dist. Summit No. 28638, 2018-Ohio-1368, ¶ 15. Moreover, it is well settled that "[t]he trier of fact is free to believe all, part, or none of the testimony of each witness." *State v. Field*, 9th Dist. Medina No. 19CA0074-M, 2020-Ohio-3525, ¶ 21.

{¶30} The jury could have reasonably concluded that the victim's testimony at trial about how she obtained her injuries was not believable, and that, instead, the versions of events she told the police was more credible. Moreover, the jury had before it the transcript of the jail call Cunningham made to the victim. During that call, Cunningham apologized to the victim, and the victim again raised allegations of Cunningham hitting her. While Cunningham denied hitting her while on the call, he also pointed out to the victim that they were "on these phones[,]" which the jury could have viewed as Cunningham acknowledging that they had to be careful what they said. Finally, the jury had before it the testimony of police officers, one of whom described the victim as appearing frightened and others who noted that Cunningham's knuckles appeared a little red. Overall, we cannot say that Cunningham has demonstrated that the verdict finding him guilty of domestic violence was against the manifest weight of the evidence. Cunningham's argument is overruled.

**Menacing by Stalking**

{¶31}   The menacing by stalking charge was based upon the events of April 22, 2019. The version the victim reported to the police was previously detailed above in the assignment of error addressing the sufficiency of the evidence.  However, the victim recanted her statement to police at the trial.

{¶32}   At the trial, the victim testified that on April 22, 2019, the victim called Cunningham's mother and asked if she could go over and get the iPad that had been left there. Cunningham's mother agreed, and the victim let herself in the house.  The victim located the iPad and also saw Cunningham's phone.  The victim knew that Cunningham was supposed to be in court that morning.   The victim looked through Cunningham's phone and saw that he was contacting other women.  She became upset.  The victim then sent the above-described texts to herself from Cunningham's phone and deleted those texts from Cunningham's phone.  The victim testified that she sent the texts to get Cunningham in trouble.  The victim then grabbed the iPad and left around 10:30 or 10:45 a.m.

{¶33}   The victim went home for a while and then got a message that a prescription was ready and so she went and picked it up.  It turned out it was a prescription for Cunningham.  The victim then called Cunningham and told him that she had his prescription, and he was very upset. The victim told Cunningham to meet her in Medina because she had to go there to pick up her daughter. While the victim was driving around, she noticed that Cunningham's vehicle was behind her vehicle for about fifteen seconds and so she decided to call the police to get Cunningham in trouble.  The victim denied feeling threatened by him.

{¶34}   Cunningham's mother confirmed that the victim called her on April 22, 2019, asking to pick up the iPad.  Cunningham's mother also testified that Cunningham was due in court

at the time and his phone was near the iPad. Around 3:00 p.m., the victim called Cunningham's mother; the victim was irate. The victim was talking about Cunningham texting other women. The victim then told Cunningham's mother about using Cunningham's phone to text the victim's phone. Cunningham's mother could not believe that the victim would send those messages from Cunningham's phone to herself. Cunningham's mother could not understand why the victim would want to destroy Cunningham in that way.

{¶35} After carefully considering all the evidence presented, we cannot conclude that Cunningham has demonstrated that the verdict finding him guilty of menacing by stalking is against the weight of the evidence. The jury again had a difficult task of wading through conflicting testimony. However, after reviewing the evidence, this Court cannot say that the jury was unreasonable in its credibility determinations. The jury could have reasonably concluded that the victim's statements to police were more credible and determined that she recanted for reasons unrelated to truthfulness.

{¶36} Cunningham's second assignment of error is overruled.

III.

{¶37} Cunningham's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

KRISTOPHER K. AUPPERLE, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.