[Cite as *State v. Crawley*, 2023-Ohio-1492.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 21AP-658 (C.P.C. No. 20CR-2202) |
| | : | and |
| v. | : | |
| Timmaree S. Crawley. | : | No. 21AP-659 (C.P.C. No. 20CR-2201) |
| Defendant-Appellant/ Cross-Appellee | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on May 4, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for State of Ohio.

**On brief:** *Campbell Law, LLC*, and *April F. Campbell*, for Timmaree S. Crawley.

APPEALS from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant/cross-appellee, Timmaree S. Crawley, appeals from his judgments of conviction and sentence in the Franklin County Court of Common Pleas. Crawley challenges his convictions for three counts of robbery, two counts of grand theft of a firearm, and two counts of having a weapon while under a disability. Plaintiff-appellee/cross-appellant, the State of Ohio, has filed a cross-appeal, in which it challenges the sentence the trial court imposed with respect to firearm specifications attached to Crawley's robbery offenses. For the following reasons, we affirm Crawley's convictions, reverse his sentence, and remand this matter to the trial court for resentencing.

## I.  FACTS AND PROCEDURAL BACKGROUND

### A.  Indictments

{¶ 1}   In May 2020, the Franklin County Grand Jury returned two indictments against Crawley.  In the first, Franklin C.P. No. 20CR-2201, Crawley was charged with two counts of attempted murder with firearm specifications, two counts of felonious assault with firearm specifications, discharge of a firearm on or near a prohibited premises with a firearm specification, improper handling of a firearm in a motor vehicle, and two counts of having a weapon while under a disability.  Those charges involved conduct alleged to have occurred on May 12 and 17, 2020.  The second indictment, Franklin C.P. No. 20CR-2202, charged Crawley with improperly handling a firearm in a motor vehicle, three counts of robbery, three counts of grand theft of a firearm, receiving stolen property, and five counts of having a weapon while under a disability.  The robbery, grand theft, and receiving-stolen-property charges in case No. 20CR-2202 contained firearm specifications.  The charges in that case involved conduct alleged to have occurred on March 29, April 10, April 12, April 17, and May 4, 2020.

{¶ 2}   The trial court granted the state's motion to join Count 6—for improper handling of a firearm in a motor vehicle on May 17, 2020—and Count 8—for having a weapon while under a disability on May 17, 2020—from case No. 20CR-2201 with case No. 20CR-2202 for purposes of trial.  The court also granted the state's request to dismiss without prejudice the remaining charges in case No. 20CR-2201.

### B.  Trial

{¶ 3}   The parties tried the remaining 15 counts to a jury.  Following the conclusion of the state's case, the trial court denied a Crim.R. 29 motion for acquittal made by Crawley.

{¶ 4}   For purposes of this appeal, we are primarily concerned with the evidence that relates to the offenses committed on April 10, April 12, and April 17, 2020.  It was alleged that on each of those dates, Crawley posed as a prospective purchaser of a used firearm and then stole the firearm from the seller.  We also review the evidence regarding the events of March 29, May 4, and May 17, 2020 to the extent the evidence is relevant to our analysis of Crawley's assignments of error.

### 1. March 29, 2020

**{¶ 5}** On March 29, 2020, Columbus Police Officer Joshua Grice responded to a call of shots fired in the North Linden area of Columbus. The suspect had been described to Grice as "a younger male, black, wearing a red hoodie and black pants or a red sweatshirt, red shirt and black pants" who had gotten into a small red car. (Oct. 12, 2021 Tr. Vol. II at 400.) Officer Grice, who was on patrol a couple streets away, initiated a traffic stop of a red Chevrolet in which Crawley was the front-seat passenger. Officers recovered firearms from the floorboard underneath the driver's seat and from the vehicle's glove box. When asked by Officer Grice, Crawley provided as his home address 1731 Carolyn Avenue.

**{¶ 6}** Crawley was charged with and found guilty of improper handling of a firearm in a motor vehicle and having a weapon while under a disability as a result of the March 29 traffic stop. He does not challenge those convictions in this appeal.

### 1. April 10, 2020

**{¶ 7}** On April 10, 2020, Dennis Glassburn received an email from a prospective purchaser of a firearm he had listed for sale on the website ARMSLIST. Glassburn arranged to meet the purchaser, who had identified himself as Derrick Fisher, at a gas station in Franklin County. After the initial contact by email, Glassburn communicated with the prospective purchaser by text message. The prospective purchaser communicated with Glassburn from a telephone number that Crawley had provided to the police as his telephone number in an unrelated interview on March 11, 2020.

**{¶ 8}** Glassburn testified that a man approached him at the gas station, sat in the passenger seat of Glassburn's pickup truck, and said, " 'hi, I'm Derrick. I'm here to see the gun.' " (Tr. at 273.) Glassburn described the man to police as a black male, about six feet tall, with a thin build and braids. Glassburn testified that the man took the gun, looked at it for a few minutes, asked some questions about it, and then opened the passenger door and ran away with the gun without paying for it. The gun was operable, but unloaded, at the time of the theft. Glassburn picked Crawley out of a photo array about two weeks later (Ex. F), and he again identified Crawley at trial as the man who stole his gun.

**{¶ 9}** Columbus Police recovered the stolen gun on May 14, 2020, from a person named Shavale Johnson.

{¶ 10} Based on the events of April 10, 2020, Crawley was charged with and convicted of robbery, grand theft of a firearm, and having a weapon while under a disability. Crawley challenges the robbery conviction on appeal.

### 2.  April 12, 2020

{¶ 11} On April 12, 2020, Daniel Lee Persinger, II, was contacted via email by a prospective purchaser regarding a firearm Persinger had listed for sale on ARMSLIST. Persinger agreed to meet the purchaser at 1731 Carolyn Avenue in Columbus—an address that Crawley had previously provided to police as his own during the March 29 traffic stop and the March 11 police interview.

{¶ 12} When Persinger arrived at 1731 Carolyn Avenue, he received a text from the purchaser, telling him to pull behind the apartment building next door.  The purchaser stated that he had to get money for the gun purchase and that he would be walking back. Unlike with the April 10 incident, the record does not contain copies of the text messages between Persinger and the purchaser or the telephone number that the purchaser used.

{¶ 13} After Persinger moved behind the apartment building, a black man wearing a black hoodie with the hood up approached Persinger's vehicle on foot and introduced himself as Josh.[1]  Persinger exited his car, greeted the man, and showed him the unloaded but operable gun in its case.  While the purchaser was holding and inspecting the gun, Persinger complied with the request from a woman—Traiona Hicks—who had exited the apartment in front of Persinger's parked car and asked him to move further along the lot. Meanwhile, the purchaser fled with the gun through a gap between the apartment buildings without paying.

{¶ 14} Persinger was unable to identify the perpetrator from a photo array that included a photograph of Crawley, and at trial he was unable to identify Crawley as the person who stole his gun.

{¶ 15} Hicks also testified at Crawley's trial about the events of April 12, 2020. Hicks, who observed the perpetrator close the gun case and run, confirmed Persinger's description of the perpetrator as a black man wearing a black hoodie, but she added that

---

[1] Persinger did not remember giving the detective who investigated the theft a last name for the perpetrator, but he stated that if the detective stated that Persinger had given him the name of Joshua Collins, he would have no reasons to dispute that.  He stated, "if I think about it, I believe that may have come from the email exchange I gave to the police."  (Tr. at 321.)

the man had short dreadlocks, with his hair pulled up in back. Hicks had previously seen and spoken to the perpetrator in the neighborhood. Hicks directed the police to a yellow house in which she thought the perpetrator lived with his grandparents and from which she had seen him coming and going. The address of that house was 1731 Carolyn Avenue, the same address the purchaser had directed Persinger to meet him at and that Crawley had previously given to police as his own. Hicks identified the perpetrator to police as something to the effect of "Timmarion," which is similar to Crawley's first name, Timmaree.

{¶ 16} On May 19, 2020, Hicks identified Crawley from a photo array as the person she saw flee with the gun on April 12. (Ex. F & I; Tr. at 366, 423.) On the morning that Hicks was scheduled to testify at Crawley's trial, however, she recognized Crawley's sister, whom she knew from school, in the courtroom. She then told the prosecutors for the first time that the person she saw on April 12 might have been someone other than Crawley. During her testimony, Hicks stated that Crawley, as she observed him in the courtroom, was not the suspect she saw on April 12, claiming that he appeared lighter than the person she saw and that his eyes were different. Yet Hicks also stated that the person she picked out of the photo array was the person she saw take the gun on April 12, 2020.

{¶ 17} Crawley was charged and convicted of robbery, grand theft of a firearm, and having a weapon while under a disability as a result of the April 12 incident. He challenges all three convictions.

### 3. April 17, 2020

{¶ 18} On April 17, 2020, Joshua Tanski arranged by email to sell a firearm that he had offered for sale on ARMSLIST. The prospective purchaser's email address was JoshCollins894@yahoo.com. Tanski agreed to meet the purchaser at a gas station in Columbus. When the prospective purchaser arrived, Tanski asked for identification, but the prospective purchaser stated that he didn't have it and asked to use Tanski's phone. When Tanski reached for his phone, the prospective purchaser grabbed the firearm from Tanski's vehicle and ran. The firearm was operable but unloaded on April 17, 2020.

{¶ 19} Columbus Police Officer Aaron Getzinger responded to Tanski's report of the theft. Tanski described the suspect to Officer Getzinger as a skinny, black male with longer braids, wearing a red tracksuit. Tanski also told Officer Getzinger that the person who stole his gun had a tattoo on his right forearm or wrist. At trial, Tanski identified the man

pictured in still photos from the gas station's surveillance video as the man who stole his gun, but he could not identify that person as Crawley. The surveillance video and still photographs were admitted into evidence.

{¶ 20} Tanski told Officer Getzinger that the person who stole his gun had identified himself as Joshua Collins, and he provided the officer with the email address that person had used to communicate with him. When Officer Getzinger investigated "Josh Collins," he found a Josh Collins who had been killed in a home invasion a few years earlier. (Tr. Vol. III at 528.) He considered that someone close to the deceased Josh Collins might have used his identity to commit this crime. Officer Getzinger identified two family members of the deceased Josh Collins who fit the general physical description of the suspect, one of whom had a tattoo on his right forearm. Officer Getzinger mentioned those relatives, Keith and Lazelle Collins, in his report as an investigative lead for the detective who would be assigned to the case.

{¶ 21} Crawley was charged and convicted of robbery, grand theft of a firearm, and having a weapon while under a disability as a result of the April 17, 2020 incident. He challenges all three convictions.

### 4. May 4, 2020

{¶ 22} On May 4, 2020, Columbus Police Officer Tavien Schwendeman and other officers responded to a report of a fight with a weapon in a room at a Red Roof Inn in Columbus. Crawley was 1 of 11 people present in that room. Officer Schwendeman recovered from the room three firearms, two of which were hidden in the toilet tank, and one of which was inside a Cheetos bag. (Tr. Vol. II at 388; Ex. K1 at 11:10, 19:50.) The firearm found in the Cheetos bag was identified as the firearm that had been stolen from Persinger on April 12. (Tr. at 315-17, 381-82.) At trial, Officer Schwendeman identified Crawley's telephone number from the May 4 incident report (*id.* at 393); that number was the same as the telephone number from which the perpetrator from April 10 communicated with Glassburn.

{¶ 23} Crawley was charged with receiving stolen property and having a weapon while under a disability as a result of the May 4 incident, but the trial court granted a mistrial on those charges because the jury was unable to reach a verdict.

### 5. May 17, 2020

{¶ 24} On May 17, 2020, while on routine parole, Officer Grice initiated a traffic stop on a silver Dodge Durango with temporary Ohio tags registered to Crawley, whom Officer Grice knew to have outstanding arrest warrants. Crawley was wearing a red sweatshirt with a Nike insignia on the left wrist. (*Id.* at 420.) The officers took Crawley into custody and impounded his vehicle. A subsequent search of the impounded vehicle uncovered a gun magazine with ten bullets, a clip, and a handgun. (*Id.* at 476-479.)

{¶ 25} Crawley was charged with and convicted of improperly handling a firearm in a motor vehicle and having a weapon while under a disability in relation to the May 17 traffic stop. He does not challenge those convictions.

### C. Sentencing

{¶ 26} Following preparation of a pre-sentence investigation and the parties' sentencing memoranda, the trial court sentenced Crawley on November 10, 2021. The court determined that the three grand theft offenses merged with the three robbery offenses, and the state elected to proceed to sentencing on the robbery offenses—Counts 2, 4, and 6. The court imposed indeterminate sentences of three to four and one half years on each of the robbery counts and ordered those sentences to run consecutively to each other and to an additional one-year sentence on the firearm specification attached to Count 2. The court imposed 12-month sentences on Counts 1, 9, 10, 11, 12, 14, and 15, to run concurrently with each other and with the remaining sentences. On December 14, 2021, the trial court filed an amended sentencing entry in case No. 20CR-2202, which included the additional language, "all Firearm specifications to run Concurrently to each other." (Capitalization sic.) (Dec. 14, 2021 Am. Jgmt. Entry at 2.) At the sentencing hearing, and as evidenced by its judgment entries, the trial court rejected the state's argument that the court was required to impose a one-year, consecutive sentence for each of the firearm specifications attached to the three robbery counts.

### D. Appeal and cross-appeal

{¶ 27} Crawley appeals his robbery convictions, as well as his convictions for other offenses committed on April 12 and April 17, 2020. In its cross-appeal, the state appeals the trial court's sentence with respect to the firearm specifications.

## II. ASSIGNMENTS OF ERROR

{¶ 28} Crawley raises five assignments of error:

[1.] Because statutory construction does not allow for an unarmed suspect to be convicted of robbery simply because the item he steals is a gun, Crawley's convictions for Robbery should be reversed.

[2.] The trial court erred in not granting Crawley's Crim.R. 29 motion for three counts of robbery, because the evidence against him was legally insufficient.

[3.] The trial court erred in not granting Crawley's Crim.R. 29 motion for the April 12, 2020, offenses because the evidence identifying Crawley as the suspect was legally insufficient.

[4.] The trial court erred in not granting Crawley's Crim.R. 29 motion for the April 17, 2020, offenses because the evidence identifying Crawley as the suspect was legally insufficient.

[5.] Because the evidence weighed manifestly against convicting Crawley for all three robbery convictions, for all offenses arising from 4/12/20 and 4/17/20, Crawley's convictions should be reversed.

(Crawely's Brief at v.)

{¶ 29} In its cross-appeal, the state presents a single assignment of error:

THE TRIAL COURT'S SENTENCE, ORDERING THE MULTIPLE ONE-YEAR FIREARM SPECIFICATIONS TO BE SERVED CONCURRENTLY WITH EACH OTHER, WAS CONTRARY TO THE LAW, AS THE FIREARM SPECIFICATIONS WERE ATTACHED TO SEPARATE TRANSACTIONS.

(State's Brief at i.)

## III.  ANALYSIS

### A.  First and Second Assignments of Error

{¶ 30}  In his first and second assignments of error, Crawley challenges his three convictions for robbery pursuant to R.C. 2911.02(A), which states, in part, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or

offense shall * * * (1) Have a deadly weapon on or about the offender's person or under the offender's control." In his first assignment of error, Crawley maintains that R.C. 2911.02(A) "does not allow an unarmed suspect to be convicted of robbery simply because the item he steals is a gun." (Crawley's Brief at 14.) In his second assignment of error, he similarly argues that there was insufficient evidence to support his convictions for robbery because, even assuming he committed the theft offenses against Glassburn, Persinger, and Tanski, there was no evidence that he was armed at the time of the offenses.

{¶ 31} "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9. When the terms of a statute are clear and unambiguous, we apply the statute as written, without interpretation. *Doe v. Greenville City Schools*, ___ Ohio St.3d ___, 2022-Ohio-4618, ¶ 21. We may look beyond the plain statutory language only when a definitive meaning remains elusive despite a thorough, objective examination of the language. *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11.

{¶ 32} Crawley argues that R.C. 2911.02(A) linguistically treats the object of the theft distinctly from the weapon in the offender's possession, such that the deadly weapon in the offender's possession cannot be the object of the theft offense. We disagree. A person is guilty of robbery if the offender "[has] a deadly weapon on or about the offender's person or under the offender's control" in any of four situations—(1) while attempting to commit a theft offense, (2) while committing a theft offense, (3) while fleeing immediately after attempting to commit a theft offense, or (4) while fleeing immediately after committing a theft offense. The statutory language is unambiguous, and contrary to Crawley's preferred reading, it does not suggest that an offender must have on or about his person a firearm separate from a firearm that is the object of the theft offense. If a person commits a theft offense by stealing a deadly weapon, which the offender then has on his person while fleeing immediately after committing the theft offense, the offender is guilty of robbery. Because the statutory language is plain and unambiguous, we may not look to canons of statutory interpretation; we must apply the statutory language as written.[2] *See Jacobson v. Kaforey*,

---

[2] Thus, Crawley's invocation of the rule of lenity and his invitation for this court to read R.C. 2911.02(A) in pari materia with other criminal statutes is misplaced. *See State v. Arnold*, 61 Ohio St.3d 175, 178 (1991) (" 'rule of lenity' applies only where there is ambiguity in or conflict between * * * statutes"); *State ex rel.*

149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 8, citing *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 33} The Supreme Court of Ohio has addressed and rejected the argument that Crawley makes here, albeit in a case involving a different statute. In *State v. Campbell*, 90 Ohio St.3d 320 (2000), the defendant challenged his conviction for a firearm specification under R.C. 2941.145, which was attached to a charge of aggravated robbery. The basis of the aggravated robbery charge was the theft of a sheriff deputy's service pistol, and the basis for the firearm specification was the defendant's possession of the stolen pistol. Campbell argued that the firearm specification could not apply when the firearm used to satisfy the requirements of the specification was also the object of the theft itself, i.e., " 'when the stolen firearm is the only firearm involved.' " *Id.* at 331. The Supreme Court rejected Campbell's argument and stated, "At the time he took the gun, he was committing a theft, and he obviously had the gun 'on or about [his] person or under [his] control.' " *Id.*, quoting R.C. 2941.145. In further considering whether Campbell displayed, brandished, or indicated possession of the firearm or used it to facilitate the aggravated robbery, as required under R.C. 2941.145(A), the court noted that aggravated robbery, like robbery here, "includes the flight immediately after the theft." *Id.* at 332. It stated, "if Campbell did 'display,' 'brandish,' 'use,' or 'indicate that [he] possessed' a 'deadly weapon' while fleeing immediately after he stole it from [the deputy], he was engaged in aggravated robbery during his flight." *Id.*, quoting R.C. 2941.145. Likewise, if Crawley had a firearm on or about his person or under his control while feeling immediately after he stole it from Glassburn, Persinger, or Tanski, he was engaged in robbery during his flight.

{¶ 34} For these reasons, we reject Crawley's argument that an offender cannot be found guilty of robbery under R.C. 2911.02(A) based on the offender's possession of a firearm while feeling immediately after stealing that firearm. We therefore overrule Crawley's first assignment of error.

{¶ 35} Crawley's second assignment of error, in which he challenges the sufficiency of the evidence with respect to his robbery convictions, stems directly from the statutory construction argument we have already rejected. Crawley argues that the record contains

---

*Celebrezze v. Bd. of Cty. Commrs.*, 32 Ohio St.3d 24, 27-28 (1987) (in pari materia rule of construction "is limited to those situations where some doubt or ambiguity exists in the wording of a statute.").

insufficient evidence to establish his guilt for robbery because there was no allegation, let alone evidence, that he had a weapon on him prior to stealing the firearms from Glassburn, Persinger, or Tanski. (Crawley's Brief at 19.) As stated in our analysis of Crawley's first assignment of error, if Crawley had a firearm on or about his person while fleeing immediately after committing a theft offense, he was guilty of robbery under R.C. 2911.02(A). The evidence demonstrates that Crawley had a firearm on or about his person in each instance while fleeing immediately after the theft offenses committed against Glassburn, Persinger, and Tanski. We accordingly overrule Crawley's second assignment of error.

### B. Third and Fourth Assignments of Error

{¶ 36} In his third and fourth assignments of error, Crawley argues that the trial court erred in denying his Crim.R. 29 motion for acquittal as to the offenses stemming from April 12 and 17, 2020 because there was insufficient evidence to identify him as the perpetrator of those offenses. Because a Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence, we apply the same standard of review to a denial of Crim.R. 29 motion as we apply to a challenge to the sufficiency of the evidence. *State v. Ndiaye*, 10th Dist. No. 19AP-10, 2020-Ohio-1008, ¶ 22.

{¶ 37} When reviewing a challenge to the sufficiency of the evidence, an appellate court asks whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, ¶ 52. Evaluation of witness credibility is not appropriate when reviewing the sufficiency of the evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. Instead, " '[t]he court essentially assumes that state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime.' " *State v. Hawkins*, 10th Dist. No. 19AP-546, 2021-Ohio-2899, ¶ 44, quoting *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Whether the evidence is legally sufficient to support a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 38} To the extent they differ from his arguments under his first and second assignments of error, Crawley's sufficiency arguments in his third and fourth assignments

of error stem from his belief that there was insufficient evidence to prove that he was the person who committed the offenses on April 12 and 17. (Crawley's Brief at 24.) "Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. This truism is reflected in the state's constitutional burden to prove the guilt of 'the accused' beyond a reasonable doubt." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 15, citing *In re Winship*, 397 U.S. 358, 364 (1970). Identification can be demonstrated through either direct or circumstantial evidence. *Id.* Both classes of evidence have equal probative value. *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). Indeed, it is "well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence." *Id.*

### 1. April 12 offenses

{¶ 39} With respect to the April 12, 2020 offenses, Crawley claims that, even viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have concluded that he was the person who stole Persinger's gun. Crawley points to Persinger's inability to identify Crawley in a photo array or at trial and to the absence of identifying information, such as a telephone number, that connected Crawley to the person with whom Persinger had communicated. Crawley also argues that Hicks's testimony was insufficient because she could not identify Crawley at trial as the person she saw on April 12 and, instead, stated that he was *not* the person she saw that day.

{¶ 40} It is true that neither Persinger nor Hicks identified Crawley at trial as the person who stole the gun on April 12, 2020. The absence of an in-court identification, however, is not determinative. "A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *Tate* at ¶ 19.

{¶ 41} Persinger provided the police with only a vague description of the person who stole his gun—a black man wearing a black hoodie. Hicks, who had also observed the offender, likewise described him as a black man wearing a black hoodie. Unlike Persinger though, Hicks had previously seen the offender around the neighborhood. She directed the police to a yellow house located across the driveway from her apartment, at 1731 Carolyn Avenue, where she believed the offender lived with his grandparents. The address of the yellow house was the address at which the prospective purchaser had instructed Persinger

to meet him (Tr. at 301) and an address that Crawley had previously claimed as his own. Hicks also told the police that she knew the offender as "Timmarion," or "something like that." (Tr. at 347-48.) Crawley's first name is Timmaree. Hicks later picked a photograph of Crawley out of a photo array as the person she saw running away with the gun on April 12, 2020. On May 4, 2020, Columbus police recovered the gun stolen from Persinger from a hotel room in which Crawley was present.

{¶ 42} Crawley would have the court ignore the evidence provided by Hicks between April 12 and the day of trial, when Hicks attempted to backtrack her identification of Crawley, after seeing Crawley's sister in the courtroom. Hicks's trial testimony may have called into question the credibility of her prior statements to the police and her prior identification of Crawley from the photo array. *See State v. Lee*, 7th Dist. No. 14 MA 120, 2016-Ohio-649, ¶ 57 (recantation concerns credibility of evidence); *State v. Cunningham*, 9th Dist. No. 19CA0081-M, 2021-Ohio-2710, ¶ 15 (conflict between victim's stories to police and prosecutor presented issue of credibility). Our review of the sufficiency of the evidence, though, does not encompass an evaluation of Hicks's credibility. *Yarbrough* at ¶ 79. When an appellate court reviews a conviction for sufficiency of the evidence, " 'the weight and credibility of the evidence are left to the trier of fact.' " *State v. Herring*, 94 Ohio St.3d 246, 253 (2002), quoting *State v. Waddy*, 63 Ohio St.3d 424, 430 (1992).

{¶ 43} After viewing the evidence in the light most favorable to the prosecution, we easily conclude that a rational trier of fact could have found beyond a reasonable doubt that Crawley was the perpetrator of the April 12, 2020 offenses.

### 2. April 17 Offenses

{¶ 44} Crawley similarly argues that his convictions for the offenses that occurred on April 17, 2020 are not supported by sufficient evidence because neither Tanski nor any other witness identified him as the culprit. As we have already stated, the state need not present a witness who can physically identify the defendant in the courtroom, "as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *Tate* at ¶ 19. Here, we conclude that, if viewed in the light most favorable to the state and if believed by the jury, there was sufficient evidence from which the jury could conclude that Crawley committed the charged acts on April 17, 2020.

{¶ 45} Tanski told Officer Getzinger that the person he had met and who had stolen his gun had identified himself as Joshua Collins, and Tanski provided the officer with the email address, JoshCollins894@yahoo.com, that person had used to communicate with him. Tanski described the suspect as a skinny, black male with longer braids, wearing a red tracksuit, and surveillance video and photographs of the suspect confirm Tanski's description. At trial, Tanski identified the man pictured in those photos as the man who stole his gun. He could not, however, state that Crawley—sitting in the courtroom—was that man.

{¶ 46} Despite Tanski's inability to identify Crawley as the person shown in the surveillance videos and photos, the jury itself was competent to compare those images with its observations of Crawley at trial and to decide the issue of identity. In another context, this court held that a "jury was able to compare [a] photograph admitted into evidence with the physical appearance of appellant whom they had seen in the courtroom" to judge the credibility of a witness that the photograph depicted the appellant. *State v. Collier*, 10th Dist. No. 97APA11-1459, 1998 Ohio App. LEXIS 3806, *11 (Aug. 20, 1998); *see also Tate*, at ¶ 19 (stating that, even in the absence of witness identification of the defendant, the jury could find proof of the defendant's identity from the evidence, including surveillance video). Many courts have condoned proof of identity by a jury's comparison of surveillance images with the appearance of the defendant in the courtroom. *See United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir.1993) ("The jury * * * was able to view the surveillance photos and [the defendant] and make an independent determination whether it believed that the individual pictured in the photos was in fact [the defendant]. * * * Whether the person sitting before the jury was the one pictured in the surveillance photographs was a determination properly left to the jury"); *United States v. Fulton*, 837 F.3d 281 (3d Cir.2016) (holding that lay opinion testimony identifying the person pictured in surveillance footage as one of the defendants was inadmissible because the witnesses "were no better equipped than the jurors" to compare the suspect's appearance with that of the defendant at trial; "the jury was able to view the surveillance photographs and compare them to the" defendants' appearances); *State v. Lazo*, 209 N.J. 9, 23 (2012) ("when there is no change in a defendant's appearance, juries can decide for themselves * * * whether the person in a photograph is the defendant sitting before them"); *State v. Spaw*, 301 P.3d 788

2013 Kan. App. Unpub. LEXIS 432 (May 17, 2013) (jurors were able to view surveillance videos and determine if the defendant was the man pictured). Here, not only were jurors able to compare the surveillance video and photos from the April 17, 2020 offenses to their observations of Crawley in the courtroom, but they were also able to compare the images from April 17 with the surveillance video from April 10, in light of Glassburn's identification of Crawley as the person depicted in the April 10, 2020 video. Furthermore, Officer Grice identified Crawley as the person pictured in a still photograph from the April 17 offenses. (Tr. at 440-41.)

{¶ 47} As additional circumstantial evidence of identity, the jury could consider that the perpetrator shown in the April 17, 2020 surveillance video and photos was wearing a distinctive red shirt that appeared to match the red shirt that Crawley was wearing on May 4, when he was identified by Officer Schwendeman at the Red Roof Inn, and again on May 17, when he was stopped by Officer Grice. Police collected Crawley's red shirt after the May 17 traffic stop, and it was admitted into evidence at trial. Still photographs taken from police bodycam footage on both May 4 and May 17, 2020 show Crawley wearing that shirt.

{¶ 48} After viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Crawley was the perpetrator of the April 17, 2020 offenses.

{¶ 49} For these reasons, we overrule Crawley's third and fourth assignments of error.

### C. Fifth Assignment of Error

{¶ 50} In his fifth assignment of error, Crawley argues that his convictions for robbery on April 10 and for all the offenses stemming from April 12 and 17 were against the manifest weight of the evidence. A challenge to the manifest weight of the evidence presents a question of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. When reviewing a manifest weight challenge, an appellate court " 'weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "A judgment should be reversed as against the manifest weight of the evidence only on the rare occasion when the evidence weighs heavily

against conviction." *State v. Long,* 10th Dist. No. 96APA04-511, 1997 Ohio App. LEXIS 416, *23 (Feb. 6, 1997).

{¶ 51} Crawley's argument with respect to his robbery convictions amounts to nothing more than a restatement of his arguments from his first and second propositions of law—that there was no evidence that he had, purported to have, or used a weapon prior to stealing the guns from Glassburn, Persinger, and Tanski. But as we have already held, possession of a firearm while fleeing immediately after committing a theft offense establishes the commission of robbery. The absence of evidence that Crawley had a firearm prior to stealing one from the victims does not demonstrate that his convictions for robbery were contrary to the manifest weight of the evidence.

{¶ 52} Crawley's convictions for the April 12 offenses were not against the manifest weight of the evidence. While Hicks denied at trial that Crawley was the offender she saw on April 12, the jury was presented with contradictory evidence of Hicks's statements to the police on April 12, as well as evidence that she picked Crawley out of a photo array as the offender. A trier of fact is free to believe or disbelieve any, or all, of the testimony and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor and determine whether the witnesses' testimony is credible." *State v. Eisenman,* 10th Dist. No. 10AP-809, 2011-Ohio-2810, ¶ 16. The jury could reasonably have believed Hicks's statements to the police and her identification of Crawley from the photo array, as well as the circumstantial evidence that Persinger was instructed to meet his prospective purchaser at an address previously claimed by Crawley as his own and that Persinger's stolen firearm was recovered from a hotel room in which Crawley was present. We cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by finding Crawley guilty of the April 12, 2020 offenses.

{¶ 53} Finally, we reject Crawley's argument that his convictions for the April 17 offenses were against the manifest weight of the evidence. While Crawley points to evidence that Officer Getzinger identified two relatives of the deceased Josh Collins who matched Tanski's description of the offender, we do not agree with Crawley that those persons were just as likely to have been the offender. The photos that Officer Getzinger obtained of Keith and Lazelle Collins were admitted into evidence, and the jury was entitled to compare those photographs to the photographs from the April 17 surveillance video.

Moreover, Officer Getzinger testified that he did not consider Keith and Lazelle Collins suspects in the April 17 offenses, but that he merely provided their identities as an investigative lead for the detective. Officer Getzinger stated that he never received any additional information to suggest that either Keith or Lazelle Collins was involved in the April 17 offenses. Indeed, there was no evidence whatsoever from which the jury could have concluded that Keith or Lazelle Collins, rather than Crawley, committed the April 17 offenses. The jury did not lose its way in finding Crawley guilty of the April 17, 2020 offenses.

{¶ 54} For these reasons, we overrule Crawley's fifth assignment of error.

**D. Cross-Appeal**

{¶ 55} In its cross-appeal, the state argues that the trial court erred by ordering, contrary to law, that Crawley serve the sentences for his three firearm specifications concurrently. Pursuant to R.C. 2953.08(G)(2)(b), we may "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if we "clearly and convincingly find" that the sentence is contrary to law.

{¶ 56} Crawley's three robbery counts—Counts 2, 4, and 6—each contained a one-year firearm specification pursuant to R.C. 2929.141(A). The jury concluded that Crawley had a firearm on his person or under his control while committing each of the robbery offenses. At Crawley's sentencing hearing, the court ordered, "the firearm specifications in Counts Two, Four and Six will run concurrent to each other." (Nov. 10, 2021 Tr. at 15.) The court noted the state's objection to the court's running of the specifications concurrently and its argument that the court was required to run the sentences on the firearm specifications consecutively to each other and to any other sentences because the robberies were committed as separate transactions on different dates.

{¶ 57} The trial court's first judgment entry set out the jury's findings of guilt on Counts 2, 4, and 6, but it did not state the jury's findings with respect to the firearm specifications. It then states, in pertinent part:

> The Court hereby imposes the following sentence of incarceration: **THREE TO FOUR AND [ONE] HALF (3-4.5) YEARS INDETERMINATE SENTENCE AS TO COUNTS TWO, FOUR, AND SIX ALL TO RUN CONSECUTIVE, AND CONSECUTIVE TO THE ONE (1)**

**YEAR FIREARM SPECIFICATION ON COUNT TWO, TOTAL SENTENCE OF TEN TO ELEVEN AND ONE HALF (10-11.5) YEARS TO BE SERVED** at the **OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.**

(Emphasis sic.)  (Nov. 17, 2020 Jgmt. Entry at 2.)  The judgment entry did not impose a sentence on, or even mention, the firearm specifications that related to Counts 4 or 6.

**{¶ 58}** An amended judgment entry, filed approximately a month later, states that the jury returned a verdict of "**GUILTY as to Counts Two, Four, and Six of the Indictment, to-wit: Robbery, in violation of Section 2911.02 of the Ohio Revised Code, being Felonies of the Second Degree with One (1) year firearm specification.**"  (Emphasis sic.) (Dec. 14, 2021 Am. Jgmt. Entry at 1.)  The amended judgment entry repeated the above quoted language regarding sentencing, but added, "**The Court Orders all Firearm specifications to run Concurrently to each other**." (Emphasis and capitalization sic.)  *Id.* at 2.  As with the original judgment entry, the amended judgment entry did not impose a sentence on the firearm specifications to Counts 4 or 6.

**{¶ 59}** A trial court's failure to impose a sentence on every firearm specification for which a defendant has been found guilty may be remedied on appeal.  *State ex rel. Jones v. Ansted*, 131 Ohio St.3d 125, 2012-Ohio-109, ¶ 2.  Even ignoring the trial court's failure to specify a sentence for the firearm specifications attached to Counts 4 and 6, we clearly and convincingly find that the trial court erred by ordering "**all Firearm specifications to run Concurrently to each other**," (emphasis and capitalization sic) (Am. Jgmt. Entry at 2), and that Crawley's sentence is therefore contrary to law.

**{¶ 60}** R.C. 2929.14(B)(1)(a)(iii) states:

> Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of * * * a felony also is convicted of * * * a specification of the type described in section 2941.141 * * * of the Revised Code, the court shall impose * * * [a] prison term of one year if the specification is of the type described in division (A) of section 2941.141 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense.

Pursuant to that section, one-year sentences for the firearm specifications attached to Crawley's robbery offenses were mandatory.

{¶ 61} R.C. 2929.14(C)(1)(a) states:

> [I]f a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, * * * the offender shall serve the mandatory prison term [for the specification] consecutively to any other mandatory prison term imposed under [division (B)(1)(a)], consecutively to and prior to any prison term imposed for the underlying felony * * * and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

Pursuant to that section, the sentences for Crawley's firearm specifications were required to be served consecutively to each other and to the sentences imposed for the underlying felonies.

{¶ 62} That said, R.C. 2929.14(B)(1)(b) limits a trial court's authority to impose sentences for multiple firearm specifications that are attached to felonies that were committed as part of the same act or transaction. It states, "[e]xcept as provided in [R.C. 2929.14(B)(1)(g)], a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section [for firearm specifications attached to] felonies committed as part of the same act or transaction." *Id.* The Supreme Court of Ohio has defined "transaction" as " 'a series of continuous acts bound together by time, space, and purpose, and directed toward a single objective.' " *State v. Wills*, 69 Ohio St.3d 690, 691 (1994), quoting *State v. Caldwell*, 9th Dist. No. 14720, 1991 Ohio App. LEXIS 5879, (Dec. 4, 1991) *32; *see also State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 211-14 (applying that definition to R.C. 2929.14(D)(1)(b)).

{¶ 63} The armed defendant in *Wills* stole a coat from a student at a bus stop and then crossed the street and stole a coat from another student. The court concluded that the armed thefts were not part of a single transaction or series of continuous acts despite their proximity in time and space. *Wills* at 691. It explained, "Wills and his cohorts singled out Stone first, surrounded him, pulled out a gun and then under threat of force robbed him. After completing this task, they then targeted Thomas, surrounded him, beat him, pulled out a gun, and then robbed him. Wills should serve no less time because of the coincidental

proximity of his two victims." *Id*. *See also State v. Peterson*, 8th Dist. No. 109306, 2022-Ohio-835, ¶ 16 (holding that each of four robberies constituted a different act or transaction for purposes of R.C. 2929.14(B)(1)(b)).

{¶ 64} Crawley's robberies were committed as separate transactions. They were not part of a series of continuous acts. They were carried out on different dates, against different victims, and each with its own objective. *See Dean* at ¶ 214. As such, R.C. 2929.14(B)(1)(b) does not apply, and the trial court was required to impose mandatory, consecutive, one-year prison terms for each of the three firearm specifications attached to the robbery charges. Because the trial court did not do so, its sentence is contrary to law. *State v. Bass*, 10th Dist. No. 14AP-992, 2015-Ohio-3979, ¶ 23 (A trial court's order to run firearm specifications concurrently is contrary to law because R.C. 2929.14 specifies that mandatory prison terms for firearm specifications must be served consecutively.).

{¶ 65} Crawley's sentence is contrary to law, both because the trial court neglected to impose sentences on the firearm specifications attached to Counts 4 and 6 and because the trial court ordered that Crawley's firearm specifications were to run concurrently. We therefore sustain the state's assignment of error in its cross-appeal.

## IV. CONCLUSION

{¶ 66} For these reasons, we affirm Crawley's convictions, reverse Crawley's sentence, and remand this matter for resentencing in accordance with this opinion and the law.

*Judgment affirmed in part,*
*reversed in part, and cause*
*remanded.*

DORRIAN and JAMISON, JJ., concur.